Estate of Charles G. Polacek, Deceased, Carolyn M. Polacek, Executrix, and Carolyn M. Polacek v. Commissioner.
Estate of Polacek v. Commissioner
Docket No. 83919.
United States Tax Court
T.C. Memo 1962-48; 1962 Tax Ct. Memo LEXIS 261; 21 T.C.M. (CCH) 271; T.C.M. (RIA) 62048; March 7, 1962
*261 Thaddeus Rojek, Esq., for the petitioners. Charles F. Quinlan, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion The respondent has determined a deficiency in income tax for the taxable year 1956 in the amount of $42,931.56. The only remaining issue is whether the decedent, Charles G. Polacek, and Carolyn M. Polacek were entitled to deduct as interest a payment made by the decedent in 1956 in the amount of $67,450.40 to the All Service Life Insurance Corporation of Phoenix, Arizona. Findings of Fact The facts stipulated by the parties are incorporated herein by this reference. In addition, the record in the case of Amor F. Pierce and Ida Mae Pierce v. Commissioner of Internal Revenue, Docket No. 70676, is incorporated herein by stipulation of the parties. Charles G. Polacek and petitioner, Carolyn M. Polacek, were husband and wife, residing at 1321 East Avalon Drive, Phoenix, Arizona. Their joint Federal income tax return for the calendar year 1956, prepared on the cash basis, was filed with the district director of internal revenue, Phoenix, Arizona. Charles G. Polacek died on January 27, 1961; petitioner Carolyn M. Polacek is the duly *262 qualified and acting executrix of his estate, which has been substituted as a party to this action. The decedent will hereinafter be referred to as Polacek. Sometime prior to December 24, 1956, Polacek and All Service Life Insurance Corporation of Phoenix, Arizona, hereinafter referred to as All Service, agreed that Polacek and All Service would enter into certain transactions and sign certain documents on December 24, 1956 which, in form, were as set forth in the paragraphs that follow. On December 24, 1956, Polacek applied to All Service for the issuance of ten deferred annuity contracts. The consideration specified for each contract was $150,000, payable in six annual installments of $25,000, or a total for the ten contracts of $250,000 per annual installment. As payment of the first annual consideration, on December 24, 1956, All Service accepted Polacek's check in the amount of $2,000 and ten nonrecourse demand promissory notes in the total face value of $248,000. On December 24, 1956, All Service accepted Polacek's application and issued to him ten deferred annuity contracts, each dated November 1, 1956, and numbered A-472 through A-481. The annuitant named in each contract *263 is a related minor. Annuity payments under each contract are to begin on the contract anniversary date at which the named annuitant's age at nearest birthday is 65 years. Polacek was the contract owner and his wife, Carolyn M. Polacek, was the death benefit beneficiary in each contract. On December 24, 1956, All Service agreed to lend Polacek $297,635 pursuant to the terms of ten contract loan agreements signed by him, five of which were each in the amount of $30,167 and required the payment of seven years of interest in advance at the rate of 3.75 percent per annum, and the other five of which were each in the amount of $29,360 and required the payment of six years of interest in advance at the rate of 3.75 percent per annum. As sole security for the loans, Polacek assigned the ten annuity contracts to All Service. Polacek was able to borrow $297,635 on the annuity contracts on December 24, 1956, because the contracts provided that the net loan value shall be computed "as of the end of any period through which interest on such loan and all prior loans have been paid in advance." Since Polacek agreed to pay interest on the loans for six and seven years in advance, the net loan value *264 was computed as of the end of the sixth and seventh year. On December 24, 1956, All Service delivered its check in the amount of $49,635 to Polacek. The balance of the loans was applied by All Service against, and in discharge of, the $248,000 in nonrecourse demand notes which Polacek had delivered to All Service in part payment of the first annual consideration. These notes were returned to Polacek with an acknowledgment thereon by All Service of payment as of December 24, 1956. On December 24, 1956, Polacek paid to All Service the sum of $67,450.40 as interest in advance on the loan of $297,635 at the rate of 3.75 percent per annum, with interest paid for more than one year in advance discounted at the rate of 2.75 percent per annum, compounded annually. Polacek made this payment to All Service by check on his account at the Farmers and Stockmens Bank in Phoenix, Arizona, wherein he had deposited All Service's $49,635 loan check of the same date. As of the end of 1956, according to the books and records of All Service, the net cash value of the ten annuity contracts was $15,272. Such net cash value was determined by subtracting $241,346 (the difference between the $297,635 *265 indebtedness on the contracts and the $56,289 refundable portion of the prepaid interest) from the $256,618 cash surrender value of the contracts. Polacek's out-of-pocket cost for the ten annuity contracts as of the same time was $19,815.40, consisting of the $2,000 he contributed to the first annual consideration plus the difference between the $67,450.40 payment made as interest and the $49,635 borrowed from All Service. But for tax considerations, Polacek's purported investment in the ten annuity contracts resulted in a net economic loss of $4,543.40 ($15,272 net cash value minus $19,815.40 net cost) in 1956. On their joint Federal income tax return for the calendar year 1956, Polacek and his wife, Carolyn M. Polacek, claimed a deduction in the amount of $67,450.40 as interest paid to All Service. The respondent has disallowed this deduction. The events which have occurred, in form, with respect to the ten annuity contracts since the taxable year in issue are set forth in the paragraphs that follow. In each of the following four years (November 29, 1957; December 5, 1958; December 10, 1959; December 30, 1960) additional new loans were made with the annuity contracts being *266 assigned as the sole collateral security therefor and pursuant to Polacek's instructions, $250,000 of the proceeds of these contract loans was applied each year to the payment of the annual consideration then due and the remaining balance of the loan proceeds was delivered to Polacek. In each of these years, Polacek paid interest in advance on the indebtedness secured by the annuity contracts. As of the end of 1960, the total outstanding indebtedness created by the previously described transactions was $1,469,909. As of the same time, interest on the then outstanding indebtedness had been paid in advance by Polacek through and to November 1, 1964. The net cash value of the ten annuity contracts, including the net refundable interest paid in advance on contract loans, was $47,818 as of the end of 1960. Polacek's participation in the transactions with All Service from 1956 through 1960 may be summarized as follows: Amount
Net
Out-of-
Yearly
Yearly
Paid
Proceeds
Pocket
Increase Net
Economic
Year
as Interest
of Loans
Costs
Cash Values
Loss
1956
$ 67,450.40
$ 47,635.00 *
$19,815.40
$15,272.00
$ 4,543.40
1957
67,452.00
47,645.00
19,807.00
15,262.00
4,543.00
1958
67,758.00
47,855.00
19,903.00
11,546.00
8,357.00
1959
67,760.00
47,865.00
19,895.00
8,215.00
11,680.00
1960
35,833.00
28,090.00
7,743.00
(2,479.00)
10,222.00
$306,253.40
$219,090.00
$87,163.40
$47,818.00
$39,345.40
*267 Following Polacek's death in January, 1961, Carolyn M. Polacek, his widow, was appointed executrix. In this capacity in February of 1961, she requested that All Service stop the running of interest on the annuity loans as well as the interest accumulations on the annuity contracts for a period not exceeding three months to give her sufficient time to study and review the effect of the ten annuity contracts. All Service granted this request. Under date of April 12, 1961, Carolyn M. Polacek wrote a letter to All Service about the ten annuity contracts which included the following: I note that the original rate of interest on loans was 3 3/4% per annum but that the rate was reduced to 3 1/2% last year. You have advised me that there has been a further reduction of loan interest to 3 1/4% this year. I would like to follow my husband's original intention by paying off a portion of the loans secured by the annuity contracts so that an increased cash surrender value will be built up. I also have been concerned with the fact that in the past the loan interest has exceeded *268 the interest accumulations in the cash value of the annuity contracts. You have pointed out that your loan interest rate is less than the yield which you could obtain from regular insurance company investments. If I were to repay the loans to the extent of $200,000.00 (upon which your investment yield would be considerably greater than 3 3/4%) will you be willing to reduce the rate of interest on the remaining loans to 3% per annum? The president of All Service, Robert Dixon Wood, replied to this letter on April 14, 1961. He indicated that if there were a repayment of annuity loans by as much as $200,000, All Service would reduce the interest rate on the remaining loans secured by the ten annuity contracts to 3 percent per annum, with the proviso that All Service reserved the right to charge interest at its prevailing rate on any additional loans which the estate might in the future make upon the security of the annuity contracts. On April 18, 1961, All Service received a check in the amount of $200,000 from Carolyn M. Polacek in behalf of the estate of Charles G. Polacek. Pursuant to accompanying instructions, All Service applied this remittance to the partial repayment of the *269 then existing indebtedness secured by the ten annuity contracts, thereby reducing this indebtedness to $1,269,090. In the forwarding letter, Carolyn M. Polacek revoked her prior election with respect to the stopping of interest on the loans and interest accumulation on the annuity contracts. Also on April 18, 1961, Carolyn M. Polacek renegotiated the loans then secured by the annuity contracts resulting in a reduction of the interest rate to be applied to the indebtedness thereafter to 3 percent per annum. Pursuant to her instructions, All Service applied the interest refund attributable to this reduction of interest rate to the further reduction of the outstanding indebtedness. As a result of the repayment of principal together with the reduction of the loan interest rate, $57,062.10 of the previously prepaid interest became refundable and was applied to the partial repayment of the outstanding indebtedness, reducing it to $1,212,027.90. As of the date of trial of this case, the outstanding indebtedness secured by the ten annuity contracts was approximately $1,212,028, and the net cash value of the ten annuity contracts, including the net refundable interest paid in advance on *270 contract loans, was approximately $242,924.50. Potential future profits from the ten annuity contracts, based on the investment therein as of the date of trial (primarily, the funds paid to All Service in April of 1961) and certain specified contingencies, are set forth in the subparagraphs that follow: (a) If the executrix, or other successor in interest, makes no further payments in reduction of the indebtedness secured by the annuity contracts and made the sixth and final payment of the annual consideration due on November 1, 1961 from the proceeds of a new and final loan of $250,000, secured by the annuity contracts, and made a payment of interest on this new loan for four years in advance through November 1, 1965, and beginning in November, 1962, and each year thereafter through November 1, 1976, makes a payment of one year of interest in advance on the outstanding indebtedness and after November 1, 1976, allows the prepaid interest to earn itself out through November 1, 1980, then (1) sometime during the period November 1, 1961 to November 1, 1962 the annual increase in the net cash value of the annuity contracts will begin to exceed the annual interest charges on the indebtedness *271 secured by the contracts, (2) the net cumulative earnings of the contracts will exceed their net cumulative cost sometime during the period November 1, 1967 to November 1, 1968, and (3) the net profit from the annuity transaction as of the year 1980 will approximate $252,527. (b) If the executrix, or other successor in interest, makes no further payments in reduction of the indebtedness secured by the annuity contracts and made the sixth and final payment of the annual consideration due on November 1, 1961, from the proceeds of a new and final loan of $250,000 secured by the annuity contracts, and made a payment of interest on this new loan for three years in advance through November 1, 1964, and thereafter allows the prepaid interest to earn itself out through November 1, 1964, and thereafter makes an annual payment of one year of interest in advance on the outstanding indebtedness through November 1, 1979, then (1) sometime during the period November 1, 1961 to November 1, 1962 the annual increase in the net cash value of the annuity contracts will begin to exceed the annual interest charges on the indebtedness secured by the contracts, (2) the net cumulative earnings of the contracts *272 will exceed their net cumulative cost sometime during the period November 1, 1969 to November 1, 1970, and (3) the net profit from the annuity transaction as of the year 1980 will approximate $207,214. (c) If the remaining indebtedness were repaid by the application thereto of a part of the cash surrender value of the ten annuity contracts, and the remaining net reserve value of $243,170 allowed to accumulate to maturity in accordance with the terms of the contracts and if the optional retirement benefit of a monthly annuity for ten years certain were exercised at maturity the payment of ten years' certain annuities would result in a net profit from the annuity transaction of approximately $800,927. In 1956 Polacek's purported purchase of the ten annuity contracts from All Service, borrowing of funds from All Service, and payment and prepayment of interest to All Service on such borrowing, were lacking in substance. During the taxable year, the steps taken had no economic or commercial substance apart from an intended tax benefit. Opinion RAUM, Judge: This is a companion case to Amor F. Pierce, 37 T.C. , decided this day. By stipulation of the parties, the record in that case *273 was incorporated herein by reference. Although the taxable years are different and the amounts involved are proportionately larger in this case, the issue of the deductibility of certain purported interest payments to the same insurance company is virtually identical. As in Pierce, the arguments of the parties have revolved around the applicability to this case of the Supreme Court's decision in . In Pierce we held that the Knetsch case was controlling. Although there is some evidence in the present record suggesting that the 1961 additional investment in the annuities may have been based upon some planned bona fide purpose, we are not convinced that its true purpose was other than to influence the result in this very case, as was the situation in Pierce. Since we have found that the transactions here involved followed the same forms as in Pierce and during the taxable year were equally lacking in substance, we here reach the same result. Based on our discussion in Pierce, we hold that respondent correctly disallowed the contested interest deduction. Cf. also William R. Lovett, 37 T.C. . Decision will be entered for the respondent. *274 Footnotes
*. After deducting the $2,000 check payment made by Polacek toward the cost of the first premium installment.↩